**\*FOR PUBLICATION\***

```
         IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. CROIX
                    APPELLATE DIVISION
```

WIFKI MUSTAFA AND WEST TOWN PLAZA  )
D/B/A AMIGOS SERVICE STATION        )
                                    )   D.C. Civ. App. No. 2006-0041
                                    )
            Appellants,              )   Super. S.C. No. 1567/2005
    vs.                             )
                                    )
DAVID MUHAMMAD D/B/A SUPREME        )
WATER WELL DRILLING SERVICES,       )
                                    )
            Appellee.                )
                                    )

On Appeal from the Superior Court of the Virgin Islands
The Honorable Maria M. Cabret, Judge Presiding

Considered: February 18, 2011
Filed: February 29, 2012

**BEFORE:** **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Senior Sitting Judge, District Court of the Virgin Islands; and **AUDREY L. THOMAS**, Judge of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, sitting by designation.

**Attorneys:**

**Wifki Mustafa,** *pro se*
St. Croix, U.S.V.I.
        For the Appellant,

**David Muhammad,** *pro se*
St. Croix, U.S.V.I.
        For the Appellee.

**Memorandum Opinion**

In this appeal, we are tasked with reviewing a breach of contract action. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDUAL BACKGROUND

When this action accrued, Wifki Mustafa was the president of West Town Plaza Inc. David Muhammad was in the business of drilling water wells. In April of 2004, Mustafa contracted with Muhammad to drill for water and construct a water well at 52A Estate Hannah's Rest on St. Croix, U.S. Virgin Islands. The written contract called for Mustafa to pay Muhammad seven thousand, three-hundred and five dollars to drill a well. Muhammad was required to drill to a depth of one-hundred and fifty feet. He was also required to obtain water at a pressurized rate of at least five gallons per minute.[1] (Trial Tr. 38:1-16.) To adequately complete the job, the contract required Mustafa to pay additional fees for equipment and installation. Equipment costs included a well screen, tank, well casing, water meter, submersible pump, and shipping and handling charges.

On April 7, 2004, Mustafa paid Muhammad $3,000.00 (three-thousand dollars). On that date, drilling commenced. Eventually,

---

[1] The contract provided that "[s]hould insufficient [water] quantity be obtained by 150 feet depth, the Customer or his/her agent will be notified so that options may be evaluated." (Appellant's Brief, Water Well Drilling Contract 1-2.)

Muhammad drilled to a depth of one-hundred and fifty feet. However, no water was obtained at that depth. Thereafter, the parties orally agreed to continue drilling to a depth of three-hundred and five feet, at the initial contract rate of thirty dollars per foot.[2]

Muhammad continued drilling until water was found at a depth of three hundred and five feet. Initially, only muddy water came out of the well. However, as Muhammad continued pumping water from the well he drilled, he demonstrated that it produced clear water.

At that juncture, Mustafa had paid Muhammad a total of $5,300.00 (five thousand three hundred dollars). However, Mustafa refused to pay for the additional materials required to properly meter, pressurize and screen the well water. (Trial Tr. 12, 39, 40.) Despite being sent an invoice, Mustafa also refused to pay labor costs for the additional drilling that Muhammad had completed. After unsuccessfully attempting to mediate the dispute before both a third-party attorney and the Islamic Council, Muhammad filed this small claims action in the Superior Court of the Virgin Islands.

On November 29, 2010, the Superior Court held a bench trial.

---

[2] Prior to agreeing to continue drilling, Muhammad required an additional deposit. Time elapsed, and Mustafa refused to pay the deposit, until March 15, 2007, when Muhammad returned to the premises to seal the well. At that point, Mustafa paid Muhammad a seven-hundred dollar deposit, the parties orally agreed to continue drilling at thirty dollars per foot, and Mustafa continued drilling.

The parties appeared *pro se*. Both Muhammad and Mustafa testified. The parties also submitted documentary evidence including photographs of the well and the contract at issue. The trial court found that Muhammad had complied with his duties under the contract and calculated his total labor costs at $9,675.00 (nine-thousand six hundred and seventy-five dollars). The court further found that Mustafa had paid Muhammad $5,300.00 (five-thousand three hundred dollars).[3] As a result, the court rendered judgment in Muhammad's favor for $4,375.00 (four-thousand three hundred and seventy-five dollars).[4] Mustafa subsequently filed this timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review final judgments and orders of the Superior Court in civil cases filed prior to January 29, 2007. *See* Revised Organic Act § 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1)(Omnibus Justice Act of 2005); *see, e.g., Gabriel Joseph v. People of the V.I.*, 2008 U.S. Dist. LEXIS 107654, at *17 (D.V.I. App. Div. Dec. 9, 2008)(the Appellate Division maintains jurisdiction over all pending appeals filed prior to January 29, 2007); *see also Hypolite v. People*, 2009 WL 152319, at *2 (V.I. Jan. 21, 2009)(same).

---

[3] The court also reasoned that Mustafa did not have a working well because he refused to pay for the equipment needed to complete well-construction.

[4] The balance due Muhammad. (Trial Tr. 18-21.)

We may reverse a trial court's factual findings only if found to be clearly erroneous. See *Poleon v. Gov't of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Gov't of the V.I.*, 150 F.Supp.2d 821,827 n.7 (D.V.I. App. Div. 2001). However, the trial court's determinations of law and claims implicating rights under the constitution are entitled to plenary review. *Id*.

### III. ISSUE PRESENTED

Whether the trial court erred in determining that the Appellant breached his duty to pay the Appellee in this contract action.

### IV. ANALYSIS

Here, the trial court's application of the law is not in dispute. Indeed, most of the dispositive facts are not in dispute. The parties do not dispute that they entered into a binding contract. The parties agree that the initial written contract called for the digging of a well. Both agree that the initial contract depth was one-hundred and fifty feet at a rate of thirty dollars per foot. The sole dispositive question of law in this matter is whether the parties' orally modified their written contract after water was not found at one-hundred and fifty feet.

It is settled law that any contract may be modified by subsequent oral agreement of the parties. *McKenzie Construction, Inc. v. St. Croix Storage Corp.*, 37 V.I. 93 (D.V.I. 1997). As the

Third Circuit has noted, valid oral modification to written contracts "may be shown by writings or by words or by conduct or by all three."[5] *Hampden Real Estate, Inc. v. Metro. Mgmt. Group, Inc.*, 142 Fed. Appx. 600, 602 (3d Cir. 2005). An oral modification of a written contract must be proven by "clear, precise and convincing evidence." *Id.* at 603.

Here, this standard is easily met where the parties do not dispute that they orally modified their written contract.[6] Indeed,

---

[5] The parole evidence rule does not preclude evidence of <u>subsequent</u> oral modifications. *Hampden Real Estate, Inc. v. Metro. Mgmt. Group, Inc.*, 253 Fed. Appx. 220, 223 (3d Cir. 2007)(emphasis added).

[6]
| | |
|---|---|
| The Court: | [W]hat I am asking is what occurred after you went the one-hundred and fifty feet and you did not obtain water, did you enter into another written contract? |
| Mr. Muhammad: | No. Based on the first contract, we agreed to go ahead and drill until you find me water. |
| The Court: | For what contract price? |
| Mr. Muhammad. | The same; thirty dollars a foot, and Mr. Mustafa told [sic] me how deep can my machine go. I told him three hundred and five feet. So he said go ahead and drill the three hundred and five feet. I went ahead and drilled three hundred and five feet at thirty dollars a foot. |

(Trial Tr. 29:8-25.)

\* \* \*

in their respective briefs, the parties explicitly concede that when water was not found at one-hundred and fifty feet, they orally agreed that Muhammad would continue drilling up to a depth of three-hundred and five feet at the initial contract rate of thirty dollars per foot.[7] (Appellant's Brief at 1-2; Appellee's Brief at 6; Trial Tr. 20:21-25, 29:8-21, 33:2-25, 39:5-9.)

Given the record before us, Mustafa's position is factually at odds with Muhammad's in only one pivotal regard: Mustafa claims that Muhammad did not find clear water. Muhammad claims that he did.

This case is a classic breach of contract action. To prevail on a claim for breach of contract under Virgin Islands law, a plaintiff must establish: (1) the existence of a contract between the parties; (2) that the defendant breached a material duty imposed by that contract; and (3) that damages resulted from the breach. *See Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F.Supp. 279, 282, 37 V.I. 49 (D.V.I. App. Div. 1997) (citing Restatement (Second) of

---

| | |
|---|---|
| The Court: | Why did you not enter into another written contract when you were unable . . . to get water out of the one hundred and fifty feet depth? . . . |
| Mr. Muhammad: | We had agreed that we were going to go based on this contract we already signed. |

(Trial Tr. 33:2-5, 33:11-13.)

[7] The parties also agree that Muhammad paid Mustafa $700.00 to continue drilling. (Appellant's Brief at 2; Appellee's Brief at 6.)

Contracts §§ 235, 237, 241); *see also George v. V.I. Lottery Comm'n*, 2010 V.I. Supreme LEXIS 77 (VI. 2010). In this bench trial, the trial court reviewed the evidence, which included the parties' testimony, photos of the well and the contract at issue. After reviewing the evidence, the trial court held that: an enforceable contract existed between the parties; Muhammad materially satisfied his duty to perform; Mustafa breached his corresponding duty to pay; and Muhammad was damaged by Mustafa's breach. Ultimately, the Superior Court judge found Muhammad's evidence credible and ruled in his favor.[8]

We may reverse a trial court's factual findings only if found to be clearly erroneous. *See Poleon*, 184 F. Supp. 2d at 428. Clear error is shown where the trial court's determination is either "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the

---

[8] The Court further concluded that the reason that Mustafa did not have clear, pressurized water was because he refused to purchase the equipment necessary to facilitate the well's clear water yield. It is well settled that issues surrounding the credibility of witnesses or the weight to be afforded evidence at trial are matters left to the factfinder, who is uniquely positioned to view a witness' demeanor and to assess credibility. *Petillo v. New Jersey*, 562 F.2d 903, 907(3d Cir. 1977); *see also Georges v. Gov't of the Virgin Islands*, 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000); *United States v. Delerme*, 457 F.2d 156, 160 (3d Cir. 1972). Such credibility determinations "should not be disturbed unless they are inherently incredible." *Petillo*, 562 F.2d at 907; *Gov't of the V.I. v. Henry*, 232 Fed. Appx. 170, 174 (3d Cir. 2007); *see also United States v. Jannotti*, 729 F.2d 213, 219-20 (3d Cir. 1984).

supportive evidentiary data." *Armstrong*, 266 F.Supp. 2d at 397. We find no evidence in this record that would lead us to second-guess the trial court's findings, or to otherwise reverse its factual conclusions as clearly erroneous.

## V. CONCLUSION

For the reasons cited above, we affirm the trial court's ruling.